BRANDON M. BARKHUFF, ESQ.
Nevada State Bar No. 8958
McDONALD CARANO WILSON LLP
2300 W. Sahara Avenue, Suite 1000
Las Vegas, NV 89102
Phone: 702-873-4100
Facsimile: 702-873-9966
bbarkhuff@mcdonaldcarano.com

Christine R. Fitzgerald, Esq. *(pending pro hac vice)*
Belcher, Starr & Fitzgerald, LLP
112 Water Street
Boston, MA 02109
Phone: 617-368-6890
Facsimile: 617-368-6891
cfitzgerald@bsflegal.com
*Attorneys for KoolConnect Technologies, Inc.*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| HOSPITALITY NETWORK, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>KOOLCONNECT TECHNOLOGIES, INC., a New York Corporation,<br><br>    Defendant. | Case No. 2:09-cv-1382-RLH-GWF<br><br>**KOOLCONNECT TECHNOLOGIES, INC.'S MOTION TO TRANSFER VENUE TO THE DISTRICT OF MASSACHUSETTS, OR, IN THE ALTERNATIVE TO STAY OR DISMISS THIS ACTION AND MEMORANDUM IN SUPPORT THEREOF** |

Defendant KoolConnect Technologies, Inc. ("KoolConnect") hereby moves this court to transfer this action to the District of Massachusetts in the interest of fairness, justice and for the convenience of the parties and witnesses pursuant to 28 U.S.C. § 1404(a) or, alternatively, to stay this action on the grounds that a related action between the same parties is currently pending in the United States District for the District of Massachusetts. This Motion is made based on the following Memorandum of Points and Authorities, the exhibits attached hereto, all of the pleadings and papers on file herein, and the arguments of counsel entertained by the Court at the time of the hearing on this matter.

## FACTUAL BACKGROUND[1]

KoolConnect is a small start-up company based in Canton, Massachusetts engaged in the business of developing and providing advanced digital and high-definition media solutions, video-on-demand (VOD), internet, and related entertainment content and services to the high-end hospitality industry. Plaintiff Hospitality Network, LLC ("HN"), a division of Fortune 500 cable company Cox Communications, Inc., is a competitor in providing VOD and internet services to the hotel gaming industry, often acting as a reseller and servicer of equipment and systems manufactured by third parties such as KoolConnect.

In late 2004, KoolConnect agreed to purchase from General Dynamics C4 Systems, Inc. ("GDC4S") of Taunton, Massachusetts certain assets known as GDC4S' "Intrigue®" business line, including GDC4S' rights and obligations under a June 2004 Intrigue Agreement between GDC4S and HN (the "Intrigue Agreement" or "Agreement").[2] Pursuant to the Agreement, GDC4S agreed to sell and deliver to HN the hardware and software components comprising its high-definition, digital VOD system (the "Intrigue System"). At the time, the Intrigue System constituted leading edge technology in the industry, being the first in-room entertainment solution to be offered in a high definition resolution. The total purchase price was $3.2 million, consisting of approximately $2.8 million for the hardware and software components, and $426,354 for a five year software maintenance package.

HN, pursuant to a separate contract between it and the Wynn Resort in Las Vegas ("Wynn"), then intended to install the system at the Wynn and provide all content, programming, ongoing maintenance, support, replacement parts and service to the hotel and its guests, in

---

[1] The facts referenced herein are set forth in the First Amended Complaint filed by Plaintiff in this action and on the First Amended Complaint filed by KoolConnect in the Massachusetts action. A copy of the First Amended Complaint in the Massachusetts action is attached hereto as **Exhibit A**.

[2] A copy of the Intrigue Agreement, which is referenced by HN throughout the Complaint but was not included as an exhibit thereto, is attached hereto as **Exhibit B**. Because the Agreement with all attachments runs nearly 100 pages in length, for the sake of brevity only the main body and Attachments 5 and 7 thereto, which define the Intrigue Specifications and the Maintenance and Support obligations at issue have been included. The full text of any or all other Attachments will be provided upon request.

exchange for all or part of the revenue generated by Wynn guest purchases of VOD and internet access.[3] See **Exhibit B** at 7, ¶ 2.

GDC4S provided HN with a limited one year warranty on the Intrigue System pursuant to which GDC4S would at no additional charge correct defects or errors exhibited by the System that did not conform to the written "Intrigue Specifications" set forth in the Agreement. Id. §11.2; Attachment 5. The Agreement otherwise expressly disclaimed all other warranties, express or implied, as follows:

> 11.4. HOSPITALITY ACKNOWLEDGES THAT GDC4S IS NOT THE MANUFACTURER OF THE EQUIPMENT OR DEVELOPER OF THE THIRD PARTY SOFTWARE OF WHICH THE INTRIGUE SYSTEM IS COMPOSED IN PART. WITH THE EXCEPTION OF THE WARRANTIES SET FORTH ABOVE, GDC4S HEREBY DISCLAIMS ALL REPRESENTATIONS AND GUARANTEES OF ANY KIND, EXPRESS OR IMPLIED, WITH RESPECT TO THE INTRIGUE SYSTEMS, EQUIPMENT, SOFTWARE, DOCUMENTATION, CUSTOM CONTENT, PRE-INSTALLATION SERVICES AND POST-INSTALLATION SERVICES, INTRIGUE SERVICES AND ANY OTHER PRODUCT OR SERVICE PROVIDED HEREUNDER OR OTHERWISE RELATING TO THIS AGREEMENT.
>
> 11.5 THE WARRANTIES SET FORTH ABOVE ARE EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES CONCERNING THE INTRIGUE SYSTEM, SOFTWARE, EQUIPMENT AND ALL SERVICES PROVIDED BY GDC4S, INCLUDING BUT NOT LIMITED TO IMPLIED WARRANTIES OF MERCHANTABILITY OR IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE AND ANY OTHER WARRANTY, WHETHER EXPRESS OR IMPLIED, WHICH ARE HEREBY DISCLAIMED...
>
> * * *
>
> 11.7 NOTHING CONTAINED IN THIS AGREEMENT SHALL BE CONSTRUED AS A WARRANTY OR REPRESENTATION THAT THE PERFORMANCE OF THE INTRIGUE SYSTEM OR THE USE THEREOF WILL ACHIEVE ANY SPECIFIC RESULT, OR A WARRANTY OR REPRESENTATION THAT HOSPITALITY OR THE CUSTOMERS THEREOF WILL ACHIEVE ANY SPECIFIC RESULT THROUGH THE PRACTICE OR USE OF THE INTRIGUE AGREEMENT OTHER THAN AS IS EXPRESSLY PROVIDED IN THIS AGREEMENT.

Id., pp. 27-29.

Finally, the Agreement also contained similarly conspicuous and express limitations of liability providing that neither party shall be liable to the other for consequential, incidental,

---

[3] KoolConnect had no contractual relationship with or other obligation to the Wynn whatsoever.

punitive, special or any other indirect damages and, further, that in no event shall GDC4S ever be liable for damages of any nature or kind in excess of the total value of the $3.2 million purchase price. Id. §§12.1-12.2, pp. 29-30.

In connection with the GDC4S/KoolConnect transaction, on March 29, 2005 the parties executed an Amendment and Consent to Assignment (the "Consent")[4] in which HN, GDC4S and KoolConnect agreed, among other things: (1) to modify the schedule upon which HN was obligated to make payment of the portion of the purchase price attributable to the software maintenance package from a single lump sum to five annual installments of $93,787.65 payable on May 1 of 2005, 2006, 2007, 2008 and 2009; and (2) to have GDC4S guarantee KoolConnect's obligations under the Agreement for several months after installation to ensure the System was properly functioning, after which HN would issue GDC4S a release.

After receipt of the various components and equipment provided for by the Agreement, HN installed the System at the Wynn in the spring of 2005 and duly paid the $2.8 million attributable to the hardware and software components. Following resolution of certain issues that had been identified with some of the set-top boxes during post-installation testing, and the replacement of the affected set-top boxes by the supplier Eagle Broadband, Inc., HN issued its release to GDC4S on November 21, 2005, confirming that the System was functioning in accordance with the specifications and had met the performance metrics set forth in the Consent.[5]

From the spring of 2005 through late 2008, the Intrigue System remained in continuous use and operation at the Wynn, generating nearly $12.5 million in revenue to HN from guest purchases of pay-per-view movies and internet access.[6]

---

[4] A copy of the Consent is attached hereto as **Exhibit C**. Both the Intrigue Agreement and the Consent provide that they shall be governed by and interpreted in accordance with New York law.

[5] A copy of the Release to GDC4S is attached hereto as **Exhibit D**.

[6] See Declaration of David C. Tahan filed in support of KoolConnect's opposition to HN's Massachusetts transfer motion ("Tahan Dec.") at ¶ 7, attached hereto as **Exhibit E**.

HN from time to time during that period also sought additional technology, engineering and support services from KoolConnect outside the scope of the Agreement to assist HN in providing various services, modifications, and improvements that the Wynn and its notoriously demanding developer/owner, Steve Wynn, demanded of HN but for which HN lacked the expertise in high-definition systems and fiber optic networks to perform itself – and for which the Wynn apparently routinely threatened to declare HN in breach of its service obligations to the hotel. On such occasions KoolConnect rendered additional services to HN from its Massachusetts headquarters on a time and materials basis. Id. at ¶ 6.

In accordance with the Consent's revised payment terms HN paid each of its installment payments due in 2005, 2006, and 2007. HN failed and refused, however, to pay the obligation due on May 1, 2008. On December 15, 2008, KoolConnect, through counsel, sent HN a demand letter advising that unless the $93,787.65 payment delinquency was resolved in full by December 22, 2008, KoolConnect would initiate litigation.[7]

Rather than resolve the payment delinquency or contact KoolConnect to discuss the matter, on December 19, 2008, HN filed this anticipatory action seeking (1) a negative declaratory judgment that it is not indebted to KoolConnect for the outstanding payments, and (2) asserting false and baseless claims against KoolConnect seeking consequential and incidental damages in excess of $9 million, all of which are barred by the express terms of the Agreement, based on alleged breaches of various UCC implied warranties which also were expressly disclaimed by the Agreement.[8]

Having raced to the courthouse in an attempt to both ambush KoolConnect into having to litigate in HN's preferred forum and to intimidate it from pursuing its rightful claims, on December 22, 2008 (the deadline KoolConnect had set for a response to its demand letter) HN's

---

[7] A copy of the demand letter is attached hereto as **Exhibit F**. Since that time, the date by which HN was obligated to make its final payment, due on May 1, 2009, has expired and that payment is also now overdue.

[8] Similarly, despite the absence of any contractual or statutory basis for such relief, HN's complaint also seeks recovery of attorneys' fees and costs as additional consequential damages.

counsel wrote to KoolConnect enclosing a copy of the newly filed complaint. Counsel closed the letter with the following statement:

> If KC is sincere about resolving this dispute we are willing to listen. Otherwise, should KC choose instead to turn a blind eye to its material breaches and claim money damages from HN, we will look forward to KC's response to the Complaint.

**Exhibit G**, p. 3.

The obvious threat implied by counsel's statement was that if KoolConnect intended to insist that HN pay the approximately $180,000 remaining due under the Agreement (the amount of which HN has never disputed), HN would bog its tiny competitor down with protracted, expensive, and publicly defamatory litigation thousands of miles from home and would assert outrageous damages claims capable of sounding the death knell for KoolConnect.

Given the David vs. Goliath disparities between the parties' resources, the apparent scorched earth tactic HN was threatening, and the very difficult economic conditions at the time, KoolConnect expressed a willingness to attempt to resolve the matter informally and thus held off on initiating its promised litigation. In the period from January through mid-March 2009 it became apparent, however, that HN's real intent was not to resolve issues between the parties substantively but merely to try to convince KoolConnect to walk away from its claims, and when that did not occur then to simply and repeatedly delay the mediation efforts HN had originally proposed.

Accordingly, on March 10, 2009, KoolConnect, having not received service of process in the Nevada action and having wasted several months operating under the mistaken assumption that HN was acting in good faith to resolve this dispute informally, filed and served its complaint in Massachusetts state court for recovery of the remaining purchase price payments owed by HN. Thereafter, KoolConnect filed a First Amended Complaint on April 3, 2009 to include a claim for violation of the Massachusetts Consumer Protection Act, M.G.L.c. 93A based on HN's unfair and deceptive conduct in attempting to harass and intimidate KoolConnect into foregoing recovery of

the remaining balance of the purchase price due from HN by the filing of its baseless and defamatory action in Nevada.[9]

HN removed the Massachusetts action to the District of Massachusetts on April 13, 2009 and thereafter moved to dismiss for *forum non conveniens* and/or to transfer to this Court. Said motion has been fully briefed by the parties and currently is pending before that Court. A scheduling conference pursuant to Fed. R.Civ. P. 16(b) also has been scheduled for September 17, 2009.

## ARGUMENT

### I. THIS ACTION SHOULD BE TRANSFERRED TO THE DISTRICT OF MASSACHUSETTS PURSUANT TO 28 U.S.C. § 1404(a)

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404. The purpose of § 1404(a) "is to prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" Van Dusen v. Barrack, 376 U.S. 612, 616, S. Ct. 2239, 101 L.Ed. 2d 22 (1964). See Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (transfer determination should be based upon an "individualized, case-by-case consideration of convenience and fairness.") Accordingly, the Court should exercise its discretion to transfer this case to the District of Massachusetts, where the case could and should have been brought originally and where a separate action between the parties is already pending.

Among the factors to be considered in the transfer analysis include: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process

---

[9]  The claims HN has asserted in this action will constitute compulsory counterclaims in the Massachusetts action. See Fed. R. Civ. P. 13(a).

to compel attendance of unwilling nonparty witnesses, and (8) the ease of access to sources of proof. Jones v. GNC Franchising, 211 F.3d 495, 498-99 (9th Cir. 2000). The convenience of and accessibility of witnesses is of considerable importance. Horowitz v. Southwest Forest Indus., Inc., 612 F. Supp. 179, 182 (D. Nev. 1985). So, too, are considerations of the parties' respective resources and practical ability to litigate in a foreign forum. See Pacific Car & Foundry Co. v. Pence, 403 F.2d 949, 953 (9th Cir. 1968).

These factors point to Massachusetts as the proper and most convenient forum.[10]

### A. The Intrigue Agreement Was Negotiated, Executed, and Performed in Massachusetts.

Massachusetts is without question the focal point of the Intrigue Agreement at issue in this action. First, the Intrigue System was created by GDC4S at its offices in Massachusetts. That is the same location: (1) where GDC4S and HN negotiated the terms and conditions of the Agreement; (2) where most of the witnesses associated with its creation and the contracting and assignment to KoolConnect reside; (3) from where GDC4S shipped the system pursuant to the Agreement's terms; and (4) from where KoolConnect performed all of its obligations under the Agreement and provided the other ancillary assistance and services requested by HN relating to the System. In addition, the harm to KoolConnect from HN's breach of its payment obligations also occurred and is directed to KoolConnect's headquarters in Canton, Massachusetts. Accordingly, this factor weighs in favor of transfer.

---

[10] There is no question that this action could have been brought in the District of Massachusetts. Where, as here, federal jurisdiction is based on diversity of citizenship, the general venue statute, 28 U.S.C. § 1391(a), provides that an action may be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(a). Personal jurisdiction and venue are proper in the District of Massachusetts because that is the judicial district where KoolConnect resides, and because a substantial part of the events or omissions giving rise to the claim occurred in Massachusetts, including HN's purposeful reaching into Massachusetts to negotiate and enter into the Intrigue Agreement and Consent with both GDC4S and KoolConnect, and HN's regularly communicating with and receiving ancillary services from KoolConnect personnel in Massachusetts. Moreover, HN consented to personal jurisdiction in Massachusetts by appearing in that action without asserting any objection to jurisdiction.

### B. None of HN's Claims Are Governed by Nevada Law and Massachusetts is Most Familiar with the Law Governing KoolConnect's Claim Against HN for Unfair and Deceptive Practices.

The issue of which court is most familiar with the law governing the claims and defenses also supports transfer. As set forth above, none of the claims asserted by HN in this action (even if they were viable) arise under or are governed by Nevada law. Rather, the choice of law provision in the Intrigue Agreement and Consent expressly provide that all claims shall be governed by, construed and interpreted under New York law. Certainly the federal judges in Massachusetts and Nevada are equally capable and well suited to interpret New York law on those issues.

Tipping the balance in favor of transfer, however, is KoolConnect's claim against HN in the Massachusetts action for violation of Mass. Gen. Laws, c.93A, §§ 2,11 ("Chapter 93A"), which prohibits unfair and deceptive acts and practices in the conduct of trade and commerce. KoolConnect's claim is based on HN's overt attempt to strong arm its smaller, financially vulnerable competitor into abandoning or compromising its claim for the remaining payments due under the Agreement under threat of having to defend the baseless Nevada action. See e.g. Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 55-56 (1st Cir. 1998) (defendant's failure and refusal to pay clear obligations to consultants in order to force favorable price concessions through the threat of expensive litigation violates M.G.L. c. 93A and gives rise to multiple damages and related relief). Since the Massachusetts court is well versed in the legislative history, statutory interpretation, and significant nuances in the body of law concerning Chapter 93A rights and remedies, it makes practical sense to have such issues resolved in Massachusetts rather than require this Court to acquaint itself with Massachusetts law. See Gulf Oil Corp., 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) ("There is an appropriateness ... in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself"). Accordingly, since there are no countervailing considerations of Nevada law, this factor weighs in favor of transfer.

C. **HN's Choice of Forum Must Be Viewed In Light of its Forum Shopping and Balanced Against the Extreme Hardship to KoolConnect of Litigating in Nevada.**

Plaintiff's choice of forum in this action warrants minimal deference because its filing of an anticipatory and essentially non-viable action in Nevada immediately in response to KoolConnect's demand letter constituted the kind of overt forum shopping and harassment courts repeatedly have discouraged. See Alltrade, Inc. v. Uniweld Prods., Inc., 946 F.2d 622, 628 (9th Cir. 1991) ("Anticipatory suits are disfavored because they are aspects of forum shopping") (quoting Mission Ins. Co. v. Puritan Fashions Corp., 706 F.2d 599, 602 n.3 (5th Cir. 1983).

Moreover, the Court must "balance the plaintiff's accorded plaintiff's choice of forum with the burden of litigating in an inconvenient forum." Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986). See Pacific Car & Foundry, 403 F.2d at 953 (reversing denial of transfer where many witnesses, including several members of petitioner's corporate staff, would have to travel to original forum in order to give testimony with consequent disruption of the conduct of its operation); Cambridge Filter Corp. v. International Filter Co., 548 F. Supp. 1308, 1311 (D. Nev. 1982) (parties' relative financial ability to undertake a trial in any particular forum is a relevant consideration.)[11]

Unlike Plaintiff, which has the financial backing and resources of its Fortune 500 company parent, Cox Communications, Inc., and its more than 22,000 employees and offices nationwide,[12] KoolConnect is a tiny startup company with a total headcount of only 22 employees, substantially all of whom are located in its Canton, Massachusetts headquarters. See Tahan Dec., at ¶¶ 3-4. KoolConnect also is not yet a profitable venture, has extremely limited financial resources, and no deep pocket parent or other affiliated entity from which to draw

---

[11] See also Williams v. Bowman, 157 F. Supp. 2d 1103, 1107-08 (N.D. Cal. 2001) (assessing relative means of the parties in determining that convenience tipped in favor of maintaining venue in original district); Helfant v. LA & So. Life Ins. Co., 82 F.R.D. 53, 58 (E.D.N.Y. 1979) ("The obvious disruption caused to [witnesses'] daily work routine and that of the corporations they work for is persuasive evidence that such a transfer would promote the parties' convenience.").

[12] See Cox website: http://ww2.cox.com/aboutus/our-story.cox

financial or operational resources during the pendency of this litigation. Id. at ¶¶ 8-9. Given its fledgling size, there are virtually no redundancies built into its operations.

In short, the financial and operational consequences to KoolConnect if it were required to divert its extremely limited resources and staff from the company's day-to-day operations in Massachusetts, including servicing its hotel clients who are contractually entitled to and depend upon 24/7 coverage from KoolConnect, in order to litigate in Nevada would be disastrous. This simple reality is well known by HN and, indeed, is the primary reason HN jumped the gun to file its complaint in Nevada at the outset. Merely because HN raced into court in Nevada in order to secure jurisdiction by ambush rather than substantively respond to KoolConnect's demand letter, however, is not a sufficient basis to expose KoolConnect to the extreme operational and financial hardship of proceeding in Nevada rather than Massachusetts.

### D.     Massachusetts Is the Focal Point in the Negotiation, Execution and Performance of the Intrigue Agreement.

As set forth above, Massachusetts was the focal point in the negotiation, execution and performance of the parties obligations under the Intrigue Agreement. Indeed, except for the limited one year repair or replace warranty obligation, neither KoolConnect nor its predecessor had any execution, performance or other obligation whatsoever in Nevada.

In this vein, and given the Complaint's repeated references to the Wynn hotel in Las Vegas, it bears emphasizing that KoolConnect had no contractual or other direct relationship with or obligation to the Wynn at all. Rather, all of the supposed issues referenced in the Complaint arose between HN and the Wynn pursuant to a separate and independent agreement between those entities under which HN alone was obligated to provide, install, service and maintain a VOD system at the hotel in exchange for financial remuneration. Since virtually all of KoolConnect's obligations under the Intrigue Agreement occurred and/or were completed (a) upon shipment of the System from Massachusetts; or (b) when KoolConnect engineers working in Massachusetts responded remotely to HN queries concerning the system and/or otherwise provided supplemental and additional services outside the scope of the Agreement, the parties'

Massachusetts contacts are significantly more substantial to the Agreement than Nevada and this factor supports transfer.

### E. The Cost of Litigating in a Foreign Forum Should be Borne by the Party Best Able to Absorb It.

In the interests of justice the relative financial status of the parties must be considered. Here, the extreme disparity in the relative means and resources of KoolConnect and HN-Cox, and the significant expense and disruption to KoolConnect's operations and employees that litigation in Nevada will entail, warrants that the case be transferred to Massachusetts. See Pacific Car, 403 F.2d at 953; Williams v. Bowman, 157 F. Supp. 2d at 1107-08; Helfant, 82 F.R.D at 58. Massachusetts also would be convenient for HN -- or at the very least, far less inconvenient than Nevada is for KoolConnect -- particularly given that its parent and related affiliates and employees regularly conduct business throughout the entire United States, including Massachusetts, and maintain a number of regional offices in New England.[13]

### F. Important Witnesses and Sources of Proof are Located in Massachusetts.

The convenience of the witnesses is one of the most important factors in the venue determination. See Horowitz, 612 F. Supp. at 182. Here, many important non-party witnesses, including KoolConnect's former Vice President of Technology, Peter Brandano, and various GDC4S employees who were instrumental in the formation, negotiation and execution of the Agreement are located in Massachusetts. Attached as **Exhibit H** hereto is a list of expected witnesses in this matter and their last known locations. The list demonstrates that the majority of relevant non-party witnesses are in Massachusetts. Because these witnesses would not be subject to compulsory process in Nevada, this factor further supports transfer.

---

[13]  See n. 13, supra.

## II. IN THE EVENT THE COURT IS NOT INCLINED TO TRANSFER, THIS ACTION SHOULD BE DISMISSED OR STAYED PENDING THE OUTCOME OF THE RELATED PROCEEDINGS IN THE DISTRICT OF MASSACHUSETTS

Given that litigation involving the same parties and issues is already pending in the District of Massachusetts, and that motions concerning the appropriate venue for resolution of the parties' disputes have been fully briefed and are currently awaiting decision that court, in the event the Court declines to transfer the case it should stay this action pending the Massachusetts court's resolution of the matters before it. See Alltrade, Inc. v. Uniweld Products, Inc., 946 F.2d 622, 625-26 (9th Cir. 1991) (a district court may transfer, stay or dismiss an action when a federal action with similar parties and issues has been filed in another district court). Staying this action will serve in the interest of judicial comity, avoiding duplicative and/or piecemeal litigation and potentially conflicting results, and the promotion of judicial efficiency and preservation of the Court's and the parties' resources. Furthermore, neither party will be prejudiced by a stay. Accordingly, in deference to the effort and attention to the issue of venue now being expended by the Massachusetts Court, a stay is warranted at this time.

### CONCLUSION

For all of the foregoing reasons, KoolConnect respectfully requests that its Motion to Transfer or Stay be granted and that the Court further award it all costs, expenses and attorneys' fees it has been forced to incur as a result of Plaintiff's improper forum shopping and its blatant, unlawful efforts to strong arm KoolConnect into foregoing the payments clearly owed to it by Plaintiff under threat of being forced to defend this harassing and vexatious litigation.

DATED this 5TH day of August, 2009.

McDONALD CARANO WILSON LLP

_____
Brandon M. Barkhuff, Esq. (#8958)
2300 West Sahara Avenue, Suite 1000
Las Vegas, Nevada 89102
*Attorneys for KoolConnect Technologies, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 5 day of August, 2009, I mailed a copy of the foregoing **KOOLCONNECT TECHNOLOGIES, INC.'S MOTION TO TRANSFER VENUE TO THE DISTRICT OF MASSACHUSETTS, OR, IN THE ALTERNATIVE TO STAY OR DISMISS THIS ACTION AND MEMORANDUM IN SUPPORT THEREOF** to the following:

Frank M. Flansburg III, Esq.
Marquis & Aurbach
10001 Park Run Drive
Las Vegas, Nevada 89145
*Attorneys for Plaintiffs*

_____
An Employee of McDonald Carano Wilson

::ODMA\PCDOCS\LVDOCS\173380\1